UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADISON KING, et. al.,

        Plaintiffs,                       Hon. Janet T. Neff

v.                                   Case No. 1:14-cv-403

CHAD CURTIS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (ECF No. 215), and Plaintiffs' Motion for Summary Judgment, (ECF No. 217).  Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiffs' Motion be **denied** and Defendants' Motion be **granted in part and denied in part**.

## BACKGROUND

In 2013, Defendant Chad Curtis was convicted of two counts of Second Degree Criminal Sexual Conduct, one count of Third Degree Criminal Sexual Conduct, and two counts of Fourth Degree Criminal Sexual Conduct.  *People v. Curtis*, Case No. 318699, Opinion (Mich. Ct. App., Feb. 12, 2015).  On April 11, 2014, Plaintiffs initiated in this Court an action against Chad Curtis, Lakewood Public Schools, Lakewood Public Schools Board of Education, and ten unidentified individuals. There are four plaintiffs in this matter.  Defendant Curtis was criminally convicted of sexually assaulting three of the Plaintiffs (King, K.S., and Jane Doe).  Curtis was not charged with criminal conduct as to the fourth Plaintiff (D.K.). While there are many individuals,

employed by or associated with the Lakewood Defendants, whose conduct is relevant in this action, there are four individuals whose actions are prominent in this matter. These individuals (and the position each held during the relevant time period) are: (1) Michael O'Mara, Superintendent of Lakewood Public Schools; (2) Brian Williams, Principal of Lakewood Public Schools; (3) William Barker, Assistant Principal of Lakewood Public Schools; and (4) Brian Potter, Member of the of Lakewood Public Schools Board of Education. The Lakewood Defendants and the ten unidentified individuals subsequently asserted a third-party claim for indemnification against Professional Contract Management, Inc. (PCMI).

With respect to the Lakewood Defendants, Plaintiffs' complaint is poorly drafted and fails to clearly articulate the theory or theories on which their claims are based. Plaintiffs have asserted against the Lakewood Defendants two counts, one invoking Title IX and the other invoking Section 1983. Each count, however, appears to contain multiple claims and/or theories. The Court has interpreted Plaintiffs' complaint as asserting the following Title IX claims against both the Lakewood Public Schools and the Lakewood Public Schools Board of Education: (1) teacher-to-student sexual harassment; (2) student-to-student sexual harassment; and (3) retaliation by fellow students. In Count IV (Section 1983), Plaintiffs allege that Lakewood Defendants failed to properly train their employees and agents causing Plaintiffs to suffer violations of their right to bodily integrity and their property right in education. Plaintiffs and the Lakewood Defendants now each move against the other for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant

probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of

persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).[1]

## ANALYSIS

**I.      Title IX**

      **A.      Teacher-to-Student Harassment**

Plaintiffs allege that Defendants Lakewood Public Schools and Lakewood Public Schools Board of Education (collectively the Lakewood Defendants) violated Title IX by failing to properly respond to the sexual assaults perpetrated on Plaintiffs by Defendant Chad Curtis.

Title IX provides, in pertinent part, that "[n]o person. . .shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  While Title IX itself does not provide for a private right of action, the Supreme Court long ago concluded that Title IX is enforceable through an implied private right of action for monetary damages.  *See Cannon v. University of Chicago*, 441 U.S. 677 (1979).  The Court later held that sexual harassment

---

[1]   As is well understood, however, "only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."  *Rogers v. Lilly*, 292 Fed. Appx. 423, 428 n.3 (6th Cir., Aug. 22, 2008) (quoting *Smoot v. United Transp. Union*, 246 F.3d 633, 649 (6th Cir. 2001)); *see also*, Fed. R. Evid. 901(a) ("[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is").  The parties have submitted and are relying upon a great deal of hearsay evidence which the Court cannot consider.  The Court has no opinion as to whether any exceptions to the rule against hearsay apply, or whether any such evidence can be properly authenticated, other than to note that the parties have not argued that any such exceptions apply or any of the evidence in question has been properly authenticated.

constitutes intentional discrimination within the purview of Title IX's private right of action. *See Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74-75 (1992). It was not until *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274 (1998), however, that the Court defined the contours of this right of action. *Id.* at 281.

In so doing, the Court observed that because the right of action in question is judicially implied, there exists an obligation to define such in a manner that is consistent with Title IX's "structure and purpose." *Id.* at 285. The Court determined that while Title IX imposes a duty on schools "not to discriminate on the basis of sex," it would nevertheless "frustrate the purposes" of Title IX to permit recovery for a teacher's sexual harassment of a student based on principles of respondeat superior or constructive notice. *Id.* at 281-86. Accordingly, the Court held that "a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs" and responds to such in a manner that constitutes "deliberate indifference to discrimination." *Id.* at 290. The following year, in *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999), the Court reiterated its earlier *Gebser* holding:

> *Gebser* thus established that a recipient intentionally violates Title IX, and is subject to a private damages action, where the recipient is deliberately indifferent to known acts of teacher-student discrimination. Indeed, whether viewed as "discrimination" or "subject[ing]" students to discrimination, Title IX "[u]nquestionably ... placed on [the Board] the duty not" to permit teacher-student harassment in its schools, and recipients violate Title IX's plain terms when they remain deliberately indifferent to this form of misconduct.

*Davis*, 526 U.S. at 643 (internal citation omitted).

Deliberate indifference in this context exists only where the "recipient entity's response to the harassment [is] clearly unreasonable in light of the known circumstances." *McCoy*

*v. Board of Educ., Columbus City Schools*, 515 Fed. Appx. 387, 391 (6th Cir., Feb. 13, 2013) (citing *Davis*, 526 U.S. at 648).  To constitute deliberate indifference the response "must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it."  *McCoy*, 515 Fed. Appx. at 391 (quoting *Davis*, 526 U.S. at 648).  As the Sixth Circuit has noted, a "failure to take *any* disciplinary action despite reports of repeated sexual harassment rises to the level of deliberate indifference," but "[i]n less obvious cases, the proportionality of the school's response in light of available information lies at the heart of the indifference analysis."  *McCoy*, 515 Fed. Appx. at 391 (citing *Davis*, 526 U.S. at 648, 654).  This deliberate indifference standard "sets a high bar for plaintiffs to recover under Title IX."  *Stiles v. Grainger County, Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016).  Moreover, the deliberate indifferent standard does not permit after-the-fact second guessing. As the *McCoy* court observed:

> In hindsight, the school district could certainly have done more.  But this is not the standard by which we impose liability.  Rather, we look to whether the school district's actions were clearly unreasonable so as to rise to the level of deliberate indifference.

*McCoy*, 515 Fed. Appx. at 392 (citing *Davis*, 526 U.S. at 648).

With respect to how the Title IX standard in teacher-to-student harassment claims is implemented in the Sixth Circuit there does not, however, exist complete consistency.  The disparity concerns the "actual knowledge" requirement articulated by the *Gebser* and *Davis* Courts. The manner in which this inconsistency is resolved is significant because it is the possession of "actual knowledge" of misconduct that triggers, on the part of the recipient, the duty to act.

In one line of authority, the Sixth Circuit has consistently held that to establish a Title IX violation a plaintiff must prove that the school district had *actual knowledge* of sexual harassment or other misconduct and exhibited deliberate indifference in response to such knowledge.  *See, e.g.,*

*Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 492 (6th Cir. 2006) ("defendants could be held liable in monetary damages [for high school coach's] misconduct only if they had actual notice of it and were deliberately indifferent"); *see also*, *McCoy*, 515 Fed. Appx. at 391 (holding that Title IX liability exists only where "officials of a recipient entity with authority to take corrective action, having been advised of a Title IX violation, decide not to remedy the violation"); *Thompson v. Ohio State University*, 639 Fed. Appx. 333, 342 (6th Cir., Jan. 26, 2016) ("[i]n the context of Title IX, a public educational institution may be liable for teacher-on-student sexual harassment if the school has 'actual knowledge' of the harassment and is deliberately indifferent in its response").

This articulation of the standard is certainly consistent with the *Gebser* Court's concern that Title IX liability not be premised on principles of respondeat superior or constructive notice.  It is also consistent with the *Gebser* Court's conclusion, quoted above, that:

> a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond.

*Gebser*, 524 U.S. at 290.

This articulation is also consistent with the *Davis* Court's observation that liability in *Gebser* was appropriate not because of the fact of the harassment, but rather because of the school district's deliberate indifference in response to learning of such.  *See Davis*, 526 U.S. 645-46 ("[l]iability in [*Gebser*] did not arise because the 'teacher's actions [were] treated' as those of the funding recipient; the district was directly liable for its own failure to act").  Or, as other courts have stated, "it is not the harassment itself that constitutes the Title IX violation but, instead, the deliberate failure to curtail known harassment."  *A.W. v. Humble Independent School Dist.*, 25

F.Supp.3d 973, 985 (S.D. Tex. 2014) (citing *Davis*, 526 U.S. 645-46); *see also*, *Peer v. Porterfield*, 2006 WL 3898263 at *6 (W.D. Mich., Jan. 8, 2006) ("*Gebser* rejects liability under Title IX based upon what a school district 'should have known'" and "[l]iability, therefore, arises only from 'an official decision by the recipient not to remedy the violation'").

While "actual knowledge" of a Title IX violation would certainly include a circumstance in which a school official witnesses first-hand a sexual assault or other form of sexual harassment, the "actual knowledge" requirement cannot, consistent with common sense, be interpreted so narrowly.  Not surprisingly, "actual knowledge" has been interpreted to include circumstances in which school officials have been informed of specific allegations of misconduct. *See, e.g., Davis*, 526 U.S. at 633-34, 653-54 ("actual knowledge" requirement satisfied where school officials were informed of allegations of sexual harassment).  However, to satisfy the "actual knowledge" requirement the allegations reported to school officials must be specific.  *See, e.g., Gebser*, 524 U.S. at 291 (complaints to principal that a teacher "made inappropriate comments during class" were insufficient to constitute actual knowledge of a sexual relationship between the teacher and a student); *Walled Lake*, 469 F.3d at 490 (allegations of "communications at odd hours, inappropriate counseling, unchaperoned off-campus activities, and inappropriate interactions with team members" insufficient to constitute actual knowledge of sexual harassment of team member by high school soccer coach); *Campbell v. Dundee Community Schools*, 2015 WL 4040743 at *4 (E.D. Mich., July 1, 2015) ("[i]n Title IX cases, a plaintiff must show more than that the defendant was on notice of some form of inappropriate behavior");[2] *Humble Ind. School Dist.*, 25 F.Supp.3d

---

[2]  The district court's dismissal of the plaintiff's Title IX claims was recently affirmed by the Sixth Circuit.  *See Campbell v. Dundee Community Schools*, - - - Fed. Appx. - - -, 2016 WL 5939880 (6th Cir., Oct. 13, 2016).

at 996-97 (allegations that a teacher "had an 'inappropriate,' 'obsessive and unusual relationship'" with student insufficient to constitute actual knowledge that teacher was sexually molesting student).

In contrast to this articulation of the relevant standard, which the Court finds to be faithful to controlling Supreme Court precedent, Plaintiffs cite to and rely upon the Sixth Circuit's decision in *Williams v. Paint Valley Local School Dist.*, 400 F.3d 360 (6th Cir. 2005). *Williams* involved incidents of sexual assault of a student by a teacher which the plaintiff alleged violated Title IX and various other provisions. *Id.* at 362. The case ultimately went to trial after which appeals to the Sixth Circuit were taken. *Id.* at 362-63. As the Sixth Circuit stated, the "primary issue on appeal is the correctness of the jury instructions." *Id.* at 363.

Before addressing the Title IX jury instruction issue, the court articulated the standard applicable to Title IX claims involving teacher-on-student sexual harassment. In so doing, the court stated, in relevant part, that "a school district can be held liable in damages for the sexual harassment if it is proven that the school district had actual notice and exhibited deliberate indifference to the alleged harassment." *Id.* at 366. The jury instruction that was at issue, however, stated the actual knowledge standard quite differently. On the issue of knowledge, the district court instructed the jury that the plaintiff had to establish that "a school district official with authority to institute corrective measures had actual notice that [the teacher] posed a substantial risk of sexual abuse to children in the school district." *Id.* at 363. In response to an objection to this instruction, the Sixth Circuit stated:

> Williams also objects to the use of the "substantial risk" gloss in the instructions given by the trial court. Such language, however, was employed in *Vance* in the above quotation, where we held that the Supreme Court's discussion of "deliberate indifference" in an Eighth Amendment case was applicable to the school context.

> A reading of the Eighth Amendment case of *Farmer* discloses that the Court used the "substantial risk" language as equivalent to "significant risk."  *See Farmer v. Brennan,* 511 U.S. 825, 839, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  The idea was to make clear that "deliberate indifference" liability could not rest on actual or constructive knowledge of an inconsequential risk.

*Williams*, 400 F.3d at 368.

The Court discerns several shortcomings with this analysis.  First, while *Gebser* and *Davis* both provide that liability under Title IX lies only where a recipient of federal funds is deliberately indifferent to known instances of harassment, neither decision includes any discussion of the Eighth Amendment standard of deliberate indifference.  Instead, the *Gebser* Court expressly stated that its deliberate indifference reference point was not the Eighth Amendment, but was instead the "deliberate indifference standard for claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation."  *Gebser*, 524 U.S. at 291 (citations omitted).  While there is certainly a degree of similarity between the deliberate indifference standard articulated in the cases cited by the *Gebser* Court and the Eighth Amendment deliberate indifference standard, the former does not contain the "substantial risk" language contained in the latter.  *See, e.g., Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 410-11 (1997).

Second, the *Williams* court inaccurately characterized the Sixth Circuit's previous decision in *Vance v. Spencer County Public School Dist.*, 231 F.3d 253 (2000).  In *Vance*, the court stated that "[t]he recipient is liable for damages only where the recipient itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to known acts of harassment."  *Id.* at 260.  It was in discussing the proof necessary to demonstrate deliberate indifference to "known acts of harassment" that the court made a passing reference to the Eighth Amendment deliberate

indifference standard.[3]  *Id.*  The court did not explain or justify its citation to the Eighth Amendment deliberate indifference standard and, as noted above, such is not premised upon the Supreme Court's inclusion thereof.

Finally, the *Williams* court justified the "substantial risk" jury instruction on the ground that it made clear that "deliberate indifference liability could not rest on actual or constructive knowledge of an *inconsequential risk*."  *Williams*, 400 F.3d at 368 (emphasis added). This statement appears to misunderstand the nature of the claim in question and the conduct (or inaction) which constitutes a Title IX violation.  Liability in this context is not determined by the seriousness of the "risk" or misconduct, but rather the appropriateness of the response to the "risk" or misconduct of which school officials have actual knowledge.  Stated differently, if a school official has actual knowledge of an "inconsequential risk," the allegedly inconsequential nature of the risk will not constitute a defense if the school official responds to such in a manner later deemed to be "clearly unreasonable under the circumstances."

In sum, inclusion of the "substantial risk" standard in the context of analyzing the "actual knowledge" element is neither persuasive nor consistent with controlling Supreme Court authority.  Inclusion of the "substantial risk" standard in such a context, in essence, transforms liability under Title IX into a "should have known" standard rather than the failure to appropriately respond to known harassment standard articulated by the Supreme Court.  In this respect, the Court also notes that Title IX does not mandate that a school employ "best practices" as Plaintiffs suggest. Rather, Title IX simply prohibits discrimination based on sex as discussed.

---

[3]  As discussed below, inclusion of a "substantial risk" or similar standard, while not appropriate in assessing "actual knowledge," is not unreasonable in the context of assessing deliberate indifference and, moreover, is arguably already incorporated therein.

The Court also notes that inclusion of something akin to the "substantial risk" standard is, in fact, inherent in the deliberate indifference standard. As previously noted, a recipient can be found to have acted with deliberate indifference if - in response to misconduct of which it has actual knowledge - the recipient responds in a way that makes students liable or vulnerable to further misconduct. It is not unreasonable to impose on school officials a "substantial risk" standard once they have actual knowledge of misconduct. However, to impose liability for a school's failure to respond to the mere risk of misconduct is inconsistent with the language of Title IX and its interpretation by the Supreme Court.

The Court further notes that it could not locate any Sixth Circuit authority subsequent to *Williams* which approved or adopted this "substantial risk" standard. Accordingly, the Court finds that to prevail on their claims of teacher-to-student sexual harassment, Plaintiffs must establish the following: (1) an official with the authority to institute corrective measures on the recipient's behalf; (2) had actual knowledge of the harassment (as defined above); and (3) the recipient's response to such knowledge exhibited deliberate indifference.

## 1.      Official with the Authority to Act

The parties do not dispute this element. As discussed below, both the Principal and Superintendent of Lakewood Public Schools were informed, on April 27, 2012, of allegations that Defendant Curtis had sexually assaulted at least one student. It is not clear when this information was communicated to members of the school board; however, it is not disputed that on May 2, 2012, Defendant Curtis informed Brian Potter, a member of the Lakewood Public Schools Board of Education, that he had engaged in "inappropriate conduct" with Plaintiff Madison King while the

pair were on school property.  (ECF. No. 225, Exhibit 8 at PageID.3085-90).  Specifically, Defendant Curtis acknowledged to Potter that he had kissed Plaintiff King.  (ECF. No. 225, Exhibit 8 at PageID.3085-90).

### 2.    Actual Knowledge

There is no dispute that the Lakewood Defendants eventually learned of Defendant Curtis' misconduct.  There is a dispute, however, as to *when* Defendant Lakewood Public Schools first possessed actual knowledge of Defendant Curtis' misconduct.[4]  Defendant argues that it did not possess actual knowledge of Defendant Curtis' misconduct until April 27, 2012, the date on which the police arrived at the school to inform school officials that at least one student had accused Defendant Curtis of sexual assault.  Plaintiffs, on the other hand, contend that there occurred, prior to April 27, 2012, three separate incidents each of which was by itself sufficient to inform school officials of Defendant Curtis' misconduct.  The Court disagrees and instead concludes that Defendant Lakewood Public Schools did not possess actual knowledge of Defendant Curtis' misconduct until April 27, 2012.

### a.    Incident No. 1

Plaintiff King testified that on one occasion when she was in the training room alone with Defendant Curtis, Assistant Principal William Barker walked in.  (ECF No. 239-1 at PageID.3711-12).  King testified that when Barker entered the training room, she was lying on the

---

[4]   There does not appear to be any dispute that Defendant Lakewood Public Schools Board of Education, via Brian Potter, possessed actual knowledge of Defendant Curtis' misconduct as of May 2, 2012.  While it is quite likely that the school board was informed of the misconduct sometime after the events of April 27, 2012, but before May 2, 2012, Plaintiffs have not identified evidence establishing such.  Thus, for present purposes, the Court will assume that the school board had actual knowledge of Defendant Curtis' misconduct as of May 2, 2012.

training table while Defendant Curtis was helping her perform hip flexor exercises.  (ECF No. 239-1 at PageID.3711-13).  King said "Hi" to Barker, but said nothing else and did not have any "follow-up conversations" with Barker about the incident.  (ECF No. 239-1 at PageID.3713).

        b.       Incident No. 2

Principal Brian Williams testified that on one occasion in December 2011 or January 2012, he entered the training room and observed Defendant Curtis and another student.  (ECF No. 225-6 at PageID.3050-52).[5]  According to Williams, the student was "sitting on the table and had a bag of ice on her hip" while Defendant Curtis was attempting to wrap the student's hip in plastic wrap to secure the ice in place.  (ECF No. 225-6 at PageID.3052).  Plaintiffs find significant that Williams described the student as being "on all fours" when he entered the training room, but as Williams testified, in his experience you simply cannot wrap ice on a person's hip if they are in a sitting position.  (ECF No. 225-6 at PageID.3055).  Williams further stated that the student was merely in a position that enabled the bag of ice to be wrapped on her hip.  (ECF No. 225-6 at PageID.3055).  Williams did not perceive the student to be in a "vulnerable" position and observed "no distress on T's face."  (ECF No. 225-6 at PageID.3055-56).  Williams further stated that he "didn't see anything illegal or inappropriate."  (ECF No. 225-6 at PageID.3055-58).

Jane Doe testified that prior to Williams entering the training room, Defendant Curtis was sexually assaulting her, but that he "quickly pulled [her] pants back up" when he heard Williams entering.  (ECF No. 225-7 at PageID.3070-71).  Doe conceded that prior to April 2012, she did not

---

[5] Williams referred to this student as "T," but Plaintiffs assert it was Plaintiff Jane Doe.

report to Williams what Defendant Curtis was doing to her before Williams entered the training room.  (ECF No. 225-7 at PageID.3071).

###### c.    Incident No. 3

In November 2011, a student's parents spoke to Assistant Principal William Barker regarding an incident involving their daughter and Defendant Curtis.  According to Barker, on November 21, 2011, he was contacted by the parents of a female student.  (ECF No. 225-5 at PageID.3035).  The parents told Barker that Curtis had approached their daughter "from behind" while she was using the squat rack.  (ECF No. 225-5 at PageID.3035).  According to the parents, Curtis' behavior made her feel "trapped" and "uncomfortable."  (ECF No. 225-5 at PageID.3036). The parents requested that Defendant Curtis refrain from approaching or speaking with their daughter.  (ECF No. 225-5 at PageID.3037).  Barker related to Defendant Curtis "exactly what the parents wanted" after which Barker "never heard a complaint from the [parents] again."  (ECF No. 225-5 at PageID.3037).[6]

Even viewed in a light most favorable to Plaintiffs, these incidents establish, at most, that Defendant Curtis was engaged in inappropriate behavior.  While the Court is disturbed that a high school would conduct athletic training in the manner and location which Lakewood did, it must also be remembered that Curtis was volunteering at Lakewood as a "fitness coach" which included athletic training.  (ECF No. 218-1 at PageID.2302).  Thus, Plaintiffs' suggestion that the fact that Curtis was engaged in the activities described above constituted definitive evidence of sexual

---

[6]  With respect to these incidents, Plaintiffs spend a great deal of time arguing facts that were not known to school officials at the time and which were not reported or asserted until well after the police notified school officials of the allegations against Defendant Curtis.  While such facts may be relevant to certain other of Plaintiffs' claims, such are not relevant when assessing whether these three incidents afforded Defendant actual knowledge of Curtis' misconduct.

harassment is not persuasive. From the perspective of school officials, based upon the facts available at that time, the incidents described above involved Curtis performing tasks for which he was permitted to volunteer and, at most, merely indicate inappropriate behavior.

While these incidents may be relevant to Plaintiffs' failure to train claims, such, neither individually nor collectively, are sufficient to constitute actual knowledge that Defendant Curtis had sexually assaulted any student or engaged in any other behavior which violated Title IX. *See, e.g., Gebser*, 524 U.S. at 291 (complaints to principal that a teacher "made inappropriate comments during class" were insufficient to constitute actual knowledge of a sexual relationship between the teacher and a student); *Walled Lake*, 469 F.3d at 490 (allegations of "communications at odd hours, inappropriate counseling, unchaperoned off-campus activities, and inappropriate interactions with team members" insufficient to constitute actual knowledge of sexual harassment of team member by high school soccer coach); *Campbell*, 2015 WL 4040743 at *4 ("[i]n Title IX cases, a plaintiff must show more than that the defendant was on notice of some form of inappropriate behavior"); *Humble Ind. School Dist.*, 25 F.Supp.3d at 996-97 (allegations that a teacher "had an 'inappropriate,' 'obsessive and unusual relationship'" with student insufficient to constitute actual knowledge that teacher was sexually molesting student).

Accordingly, the Court finds that Defendant Lakewood Public Schools first possessed actual knowledge of Defendant Curtis' misconduct on April 27, 2012. The Court further finds that Defendant Lakewood Public Schools Board of Education possessed actual knowledge of Defendant Curtis' misconduct no sooner than April 27, 2012, and no later than May 2, 2012.

3.       Deliberate Indifference

To assess this element, the actions and inactions of the two Lakewood Defendants must be assessed separately, although the Court reaches the same conclusion with respect to both, namely that whether Defendants responded to Curtis' misconduct with deliberate indifference is a question for a jury to resolve.

A.       Lakewood Public Schools

With respect to Lakewood Public Schools, the Court finds the question of deliberate indifference to be a close call.  As the evidence submitted by Defendants demonstrates, officials at Lakewood Schools did not do nothing in response to learning of Defendant Curtis' misconduct.  As noted above, where school officials cannot be said to have failed entirely to act, "the proportionality of the school's response in light of available information lies at the heart of the indifference analysis."   While school officials undertook certain actions in response to Defendant Curtis' misconduct, there are several factors that in the Court's estimation require this particular matter to be resolved by a jury.

First, Superintendent Michael O'Mara was asked during a deposition whether he believed the school district, once it had been informed by the police that at least one student had made allegations of sexual assault against Defendant Curtis, had an obligation to "investigate further into whether the allegations out against Chad Curtis were true."  (ECF No. 215-3 at PageID.1501). O'Mara responded that "there was no reason to investigate" because the allegations against Defendant Curtis were being investigated by the police. (ECF No. 215-3 at PageID.1501).  Principal Williams also testified that he was instructed "not to investigate. . .or not to. . .get involved in. . .the

police investigation." (ECF 215-1 at PageID.1439).[7] Relatedly, upon learning of the allegations against Defendant Curtis, the school district's official position was that it was obliged to remain "neutral" in the matter and respect Defendant Curtis' "rights." (ECF No. 218-15 at PageID.2580).

These positions reflect a misunderstanding of the school district's obligations under Title IX. As the United States Department of Education had previously informed educators, "the school's Title IX investigation is different from any law enforcement investigation, and a law enforcement investigation does not relieve the school of its independent Title IX obligation to investigate the conduct." (ECF No. 225-14 at PageID.3199); *see also, Doe v. Forest Hills School District*, No. 1:13-cv-428, 2015 WL 9906260 at \*17 (W.D. Mich., Mar. 31, 2015) (while "[p]olice investigations or reports may be useful in terms of fact gathering. . .because legal standards for criminal investigations are different, police investigations or reports may not be determinative of whether harassment occurred under Title IX and do not relieve the school of its duty to respond promptly and effectively"). While the Court is not suggesting that the school district should have openly speculated about the allegations against Curtis or acted to violate Curtis' right to a fair trial, a reasonable juror could interpret the school district's assertion of neutrality as a repudiation of their obligations under Title IX to protect students from sexual harassment and discrimination and, therefore, constitute evidence of deliberate indifference.

The argument that Defendant Lakewood School District failed to fulfill its obligations under Title IX is further supported by the evidence that Plaintiffs experienced, for a significant period of time, a hostile learning environment exacerbated by the failure of school officials to

---

[7] Principal Williams nevertheless apparently engaged in some type of investigation or assessment after learning of Defendant Curtis' misconduct and concluded that the allegations against Defendant Curtis were true. (ECF No. 225-6 at PageID.3060). Williams, however, failed to share his opinions or conclusions with the Superintendent. (ECF No. 218-1 at PageID.2311).

modify their approach and tactics once it became clear that their initial efforts were having less than the desired effect.  Relevant to this conclusion is the Court's determination that a reasonable juror could find that had the Superintendent understood the need to undertake an appropriate investigation, the hostile atmosphere within the school and community could very well have been minimized thereby preventing much of the trauma and distress that Plaintiffs suffered after reporting Defendant Curtis' misconduct.

        B.      Lakewood Public Schools Board of Education

With respect to the Lakewood Public Schools Board of Education, the Court reaches the same result.  The record contains little evidence concerning the school board's response upon learning of Defendant Curtis' misconduct.   One item of evidence that cannot be minimized, however, is that less than one week after school officials learned of Defendant Curtis' misconduct, Curtis informed school board member Brian Potter that he had engaged in "inappropriate" sexual conduct with Plaintiff King.  (ECF. No. 225-8 at PageID.3085-90).  Potter failed to report Curtis' remarks to the prosecuting attorney, other school board members, or school officials.  (ECF. No. 225-8 at PageID.3088-89).  In the Court's estimation, a reasonable juror could conclude that this evidence is sufficient to find that the school board was deliberately indifferent to Defendant Curtis' misconduct.  The hostile environment Plaintiffs experienced after reporting Curtis' misconduct was based upon a belief by many within the community that Plaintiffs had fabricated their allegations. It is not unreasonable to conclude that had Potter reported Curtis' comments to the school board or school officials the response to Plaintiffs' allegations would have been much different and much more supportive of Plaintiffs.

There also exists evidence that the school board, upon learning of Curtis' misconduct, took little, if any, action for quite some time.  While there exists evidence suggesting that the board was receiving updates from school officials about the matter, given the school board's leadership and governance role vis-a-vis the school district, a reasonable juror could conclude that the school board's minimal and untimely reaction to Curtis' misconduct constituted deliberate indifference and contributed to the hostile environment Plaintiffs experienced after reporting their allegations against Defendant Curtis.

In sum, a reasonable juror could conclude that the response by Defendants to Curtis' misconduct was clearly unreasonable and was a significant contributing factor to the hostile environment that Plaintiffs experienced after reporting Curtis' misconduct.  Likewise, a reasonable juror could instead conclude that Defendants' response to Curtis' misconduct was not *clearly* unreasonable.  Accordingly, the undersigned recommends that as to Plaintiffs' Title IX claims premised upon Defendant Curtis' misconduct and Defendants' alleged deliberate indifference thereto, Plaintiffs' motion be **denied** and Defendants' motion be **denied**.

B.     Student-to-Student Harassment

Plaintiffs next allege that the Lakewood Defendants violated Title IX by failing to appropriately curtail or respond to harassing conduct perpetrated by various students.

As noted above, the year after its *Gebser* decision, the Supreme Court decided *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999).  The issue in *Davis* was whether the rule established in *Gebser* applied where a student is sexually harassed by a fellow student rather than a teacher.  *Id.*   The Court concluded that "in certain limited circumstances, it does."  *Id.*

Specifically, the Court held that a recipient of federal funds is liable for student-on-student harassment "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Accordingly, to prevail on these claims Plaintiffs must establish the following: (1) Plaintiffs suffered sexual harassment so severe, pervasive, and objectively offensive that it deprived Plaintiffs of access to the educational opportunities or benefits provided by the school; (2) Defendants had actual knowledge of the sexual harassment; and (3) Defendants were deliberately indifferent to the sexual harassment. *See Vance*, 231 F.3d at 258-59 (citing *Davis*, 526 U.S. at 633).

The requirement that the sexual harassment be sufficiently severe, pervasive, and objectively offensive is applicable only to student-on-student harassment claims. *See, e.g., Hill v. Cundiff*, 797 F.3d 948, 969-70 (11th Cir. 2015) ("the Supreme Court has applied a more rigorous standard when a Title IX plaintiff seeks damages against a school district for student-on-student harassment"). As the *Davis* Court itself observed:

> the provision that the discrimination occur "under any education program or activity" suggests that the behavior be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity. Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment. By limiting private damages actions to cases having a systemic effect on educational programs or activities, we reconcile the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to be ignored. . .The relationship between the harasser and the victim necessarily

> affects the extent to which the misconduct can be said to breach Title IX's guarantee of equal access to educational benefits and to have a systemic effect on a program or activity. Peer harassment, in particular, is less likely to satisfy these requirements than is teacher-student harassment.

*Davis*, 526 U.S. at 652-53.

Applying this heightened standard to claims of student-on-student harassment is intended to protect school districts from being "financially crippled" merely because immature kids occasionally engage in immature behavior. *Hill*, 797 F.3d at 969-70. The Supreme Court has also emphasized that recipients "need not 'purge their schools of actionable peer harassment' or 'engage in particular disciplinary action' to avoid Title IX liability." *Stiles*, 819 F.3d at 848 (quoting *Davis*, 526 U.S. at 648). Moreover, Title IX "does not give victims a right to 'make particular remedial demands'" and "courts should avoid second-guessing school administrators' disciplinary decisions." *Stiles*, 819 F.3d at 848 (quoting *Davis*, 526 U.S. at 648).

The harassment giving rise to a Title IX claim must, furthermore, be undertaken "on the basis of sex." *Morgan v. Town of Lexington, MA*, 823 F.3d 737, 745 (1st Cir. 2016). Harassment "on the basis of sex is the sine qua non of a Title IX sexual harassment case" and harassment based upon "personal animus. . .is more properly described as teasing or bullying than as sexual harassment." *Sanches v. Carrollton-Farmers Branch Ind. School Dist.*, 647 F.3d 156, 165-66 (5th Cir. 2011). Plaintiffs in a Title IX sexual harassment claim "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but in fact constituted discrimination because of sex." *Hankey v. Town of Concord-Carlisle*, 136 F.Supp.3d 52, 65-66 (D.Mass. 2015); *see also*, *Wolfe v. Fayetteville, Arkansas School Dist.*, 648 F.3d 860, 865 (8th Cir. 2011) ("[P]roof of sex-based motivation is required for a Title IX deliberate indifference claim"

because "Title IX imposes liability on a school district for discrimination only if the discrimination is 'on the basis of sex.'").

Plaintiffs have presented evidence detailing widespread "harassment" that they suffered at the hands of fellow students. However, even interpreted in a manner most favorable to Plaintiffs, this evidence neither establishes nor supports the inference that the conduct of which Plaintiffs complain was based on Plaintiffs' gender. Instead, the evidence reveals that the offending students were instead motivated by personal animus towards Plaintiffs for having reported to police and school officials Defendant Curtis' misconduct. The conduct of which Plaintiffs complain is more appropriately characterized as bullying which, while unfortunate, does not support a Title IX claim based on student-to-student harassment, although the facts in question are certainly relevant to other of Plaintiffs' claims. Accordingly, the undersigned recommends that, as to Plaintiffs' Title IX claims based upon alleged harassment by other students, Plaintiffs' motion be **denied** and Defendants' motion be **granted**.

C.      Retaliation

Finally, Plaintiffs allege that the Lakewood Defendants violated their rights by subjecting them to unlawful retaliation in violation of Title IX.

The Supreme Court has made clear that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." *Jackson v. Birmingham Board of Educ.*, 544 U.S. 167, 173 (2005). However, a claim of unlawful retaliation in violation of Title IX cannot be asserted against students, but can only be asserted against the recipients of federal funds, in this case

either the school district or the school board.  *See, e.g., Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009) (Title IX does not authorize suit against "school officials, teachers, and other individuals").

The standard for establishing retaliation in the Title IX context is well known.  In the absence of direct evidence of retaliation, Plaintiffs' claims are analyzed pursuant to the familiar *McDonnell Douglas* burden shifting framework.  *See Gordon v. Traverse City Area Public Schools*, - - - F.Supp.3d - - -, 2016 WL 1566721 at *7 (W.D. Mich., Apr. 19, 2016).  Pursuant to this framework, a plaintiff can establish a prima facie case of retaliation by demonstrating: (1) she engaged in protected conduct; (2) the defendant had knowledge of the protected conduct; (3) she suffered adverse school-related action; and (4) there exists a causal connection between her protected conduct and the adverse action.  *Id.*  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for its actions.  If the defendant accomplishes this task, the burden shifts back to the plaintiff who must then demonstrate that the defendant's proffered rationale is merely a pretext for discrimination.  *Gordon*, 2016 WL 1566721 at *7.

In their motion for summary judgment, (ECF No. 218), Plaintiffs do not cite this (or any similar) standard.  In their response to Defendants' motion for summary judgment, (ECF No. 225), Plaintiffs again do not identify the appropriate legal standard, but nevertheless appear to assert that a retaliation claim lies on the basis of alleged actions by students.  While the actions of their fellow students are relevant to Plaintiffs' deliberate indifference claim discussed above, to the extent Plaintiffs seek to assert a claim of retaliation such can only be asserted against Lakewood Public Schools or Lakewood Public Schools Board of Education.  As Plaintiffs have failed to indicate that

-25-

they are pursuing any such claim or, more importantly, advance any argument or identify any evidence which would support such a claim, the undersigned recommends that to the extent Plaintiffs are asserting a Title IX retaliation claim against the Lakewood Defendants, Plaintiffs' motion for summary judgment be **denied** and Defendants' motion for summary judgment **granted**.

## II.        Section 1983

Plaintiffs allege that Lakewood Defendants failed to properly train their employees and agents causing Plaintiffs to suffer violations of their constitutional rights.

To prevail on this theory, Plaintiffs must prove that their injuries were caused by a Defendant's policy or custom. *See Ellis v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Since there is no evidence that Defendants had an affirmative policy advocating or approving student abuse, Plaintiffs must instead demonstrate that Defendants had "a policy of inadequate training or supervision." To establish the existence of such a policy, Plaintiffs must prove: (1) Defendant's training or supervision was inadequate for the tasks performed; (2) this inadequacy was the result of Defendant's deliberate indifference; and (3) the inadequacy was "closely related to or actually caused" Plaintiff's injury. *Id.*

### A.        Defendant Lakewood Public Schools

### 1.        Inadequacy of Training or Supervision

Plaintiffs have presented evidence, compiled as part of a 2004 study prepared for the United States Department of Education, that approximately ten percent of students in grades 8 to 11 experienced "educator sexual misconduct that was unwanted." (ECF No. 225-1 at PageID.2872-73).

-26-

On January 25, 2006, Stephanie Monroe, Assistant Secretary for Civil Rights for the United States Department of Education, authored a "Dear Colleague" letter to educators the purpose of which was "to increase awareness of an important issue affecting students - sexual harassment." (ECF No. 225-2 at PageID.3005).   Monroe reminded educators that "[u]nfortunately, a significant number of students are still subjected to sexual harassment, which can interfere with a student's education as well as his or her emotional and physical well-being."  (ECF No. 225-2 at PageID.3005).  Monroe also reminded educators that "harassment of students can be a form of sex discrimination covered by Title IX."  (ECF No. 225-2 at PageID.3005).

On April 4, 2011, Russlynn Ali, Assistant Secretary for Civil Rights for the United States Department of Education, authored a "Dear Colleague" letter to educators emphasizing that "[s]exual harassment of students. . .is a form of sex discrimination prohibited by Title IX."  (ECF No. 225-14 at PageID3196).  Ali noted that "[d]uring the 2007-2008 school year, there were 800 reported incidents of rape and 3,800 repored incidents of other sexual batteries at public high schools."  (ECF No. 225-14 at PageID3197).  Ali then detailed, over the course of seventeen pages, Title IX's requirements regarding sexual harassment and how schools can satisfy such.  (ECF No. 225-14 at PageID3198-3214).

This evidence establishes that sexual harassment or assault of high school students is a serious problem that requires a level of preparation and training on the part of teachers and school administrators which is commensurate to the harm such conduct causes to victims and the entire school community.  Plaintiffs have presented a substantial amount of evidence which compels the conclusion that the training and supervision by Lakewood Public Schools, vis-a-vis the sexual

harassment or sexual assault of students by teachers or other adults, was woefully insufficient if not altogether nonexistent.

Superintendent Michael O'Mara testified that prior to April 2012 he had never attended any training concerning teacher-on-student sexual harassment. (ECF No. 225-12 at PageID.3118). O'Mara testified that he had never received any training to "identify signs of sexual harassment or sexual abuse of children." (ECF No. 225-12 at PageID.3119). O'Mara testified that prior to April 2012, there did not exist an employee handbook or any other written material providing guidance "regarding warning signals that might appear that a child is being sexually abused." (ECF No. 225-12 at PageID.3119-20). O'Mara testified that teachers, volunteers, and coaches never received "any practical training about how to identify and report sexual harassment." (ECF No. 225-12 at PageID.3120). O'Mara testified that the school, prior to April 2012, did not provide any training to students concerning sexual assault. (ECF No. 225-12 at PageID.3120-21). O'Mara testified that he had received "several" "Dear Colleague" letters published by the United States Department of Education, but he was unable to recall any of their contents. (ECF No. 225-12 at PageID.3119).

Principal Brian Williams testified that, prior to April 2012, neither he nor any teachers or staff received any training regarding teacher-on-student sexual assault. (ECF No. 225-6 at PageID.3046, 3059-60). Williams testified that prior to April 2012 the school did not provide any training to students regarding sexual abuse or "how to maintain safety" when they were alone with teachers. (ECF No. 225-6 at PageID.3047-48). Assistant Principal William Barker testified that prior to April 2012 he had never received any training regarding teacher-on-student sexual

harassment.  (ECF No. 225-5 at PageID.3038-39).  In sum, no reasonable juror could conclude that Defendants' training and supervision in this regard was anything but legally deficient.


        2.        Deliberate Indifference

        Deliberate indifference can be established by demonstrating either: (1) Defendants failed to act in response to "repeated complaints of constitutional violations" by its representatives, or (2) Defendants "fail[ed] to provide adequate training in light of foreseeable consequences that could result from a lack of instruction."  *Ellis*, 455 F.3d at 700-01.  Deliberate indifference is a "stringent standard of fault, requiring proof that [Defendant] disregarded a known or obvious consequence of [its] action."  *Regets v. City of Plymouth*, 568 Fed. Appx. 380, 394 (6th Cir., June 10, 2014).  Plaintiffs have not alleged that Defendants failed to act in response to repeated complaints of constitutional violations, thus Plaintiffs must establish that Defendants failed to provide training adequate to the circumstances.

        Deliberate indifference is a difficult standard for Plaintiffs to satisfy.  However, as the Honorable Paul L. Maloney recently observed, "[b]ecause sexual assault claims arise frequently in the public high school context, it is certainly foreseeable that the failure to train school staff on how to handle such claims would cause disastrous results."  *Doe v. Forest Hills School District*, 2015 WL 9906260 at \*17 (W.D. Mich., Mar. 31, 2015).  This sentiment would appear to apply with equal force to a failure by school officials to train school staff on how to recognize and respond to the behaviors and circumstances that increase the risk that sexual harassment or sexual assault will occur.  In sum, while the evidence with respect to this element weighs heavily in Plaintiffs' favor,

-29-

the Court cannot conclude that it is so one-sided that no reasonable trier of fact could find for Defendants.

        3.      Causation

In assessing this element, the Court "must undertake the admittedly difficult task of 'predicting how a hypothetically well-trained [person] would have acted under the circumstances.'" *Forest Hills*, 2015 WL 9906260 at *17 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)). There exists ample evidence that school officials were not properly trained with respect to issues such as Title IX, Title IX compliance, and recognition and prevention of sexual harassment and sexual assault. There is no evidence suggesting that school officials would not have followed, to the best of their abilities, such training had it been provided. A reasonable juror could conclude that had school officials been properly trained their response to Defendant Curtis' misconduct would have been significantly different, lessening or even preventing altogether the injuries Plaintiffs suffered. Accordingly, a reasonable juror could conclude that school officials' inadequate training was "closely related to or actually caused" Plaintiffs' injuries.

In sum, while the evidence relative to this claim weighs heavily in Plaintiffs' favor, the evidence is not so one-sided as to warrant summary judgment for Plaintiffs who bear the burden as to this claim. As noted above, summary judgment in favor of the party with the burden at trial "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Accordingly, the undersigned recommends that with respect to Plaintiffs' failure to train claims against Defendant Lakewood Public Schools, Plaintiff's motion for summary judgment be **denied** and Defendant's motion for summary judgment be **denied**.

B.      Defendant Lakewood Public Schools Board of Education

Plaintiffs' Failure to Train claims all focus on the failure by school district officials to either receive or provide proper training on the topic of sexual harassment and sexual assault as discussed above.  Plaintiffs do not appear to have asserted or argued any such claims against the Board of Education.  Moreover, Plaintiffs do not appear to have identified any evidence that would support any such claims against the Board of Education.  Accordingly, to the extent that Plaintiffs have asserted a failure to train claim against Defendant Lakewood Public Schools Board of Education, the undersigned recommends that Plaintiffs' motion for summary judgment be **denied** and Defendants' motion for summary judgment be **granted**.


## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment,</u> (ECF No. 215), be **granted in part and denied in part**, and <u>Plaintiffs' Motion for Summary Judgment,</u> (ECF No. 217), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's

order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  November 1, 2016                     /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge